UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLYDE RHODES,

       Plaintiff                         Civil Action No. 12-15176

v.                                HON. GERALD E. ROSEN
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Clyde Rhodes ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On March 23, 2005, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of March 14, 2003 (Tr. 169-173).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on January 24, 2008 before Administrative Law Judge ("ALJ") Roy L. Roulhac in Port Huron, Michigan (Tr. 35).  On

-1-

April 25, 2008, ALJ Roulhac found Plaintiff not disabled (Tr. 47).  On May 21, 2010, the Appeals Council remanded the case for additional fact-finding, noting that the ALJ relied on the medical records of an individual other than Plaintiff in making his decision (Tr. 49).  The Appeals Council also directed the ALJ to articulate the portion of the records used to support the Residual Functional Capacity, obtain an additional evaluation, and if necessary, take addition vocational expert testimony (Tr. 50).

ALJ Roulhac held a second hearing on January 19, 2012 (Tr. 738).  Plaintiff, represented by attorney Daniel Pollar, testified (Tr. 743-749) as did Vocational Expert ("VE") Don Harrison (Tr. 750-752).  On February 16, 2012, ALJ Roulhac again found Plaintiff not disabled (Tr. 29).  On November 2, 2012, the Appeals Council denied review (Tr. 7-9).  Plaintiff filed for judicial review of the final decision on  November 26, 2012.

## BACKGROUND FACTS

Plaintiff, born August 14, 1963, was 48 when ALJ Roulhac issued his decision (Tr. 29, 169).  At the time of the application, he had completed one year of college (Tr. 281) and worked previously as a general laborer and truck driver (Tr. 475-476).  He alleges disability due to nerve damage to the shoulders (Tr. 274).

### A.      Plaintiff's Testimony[1]

---

[1] The transcript of the original hearing, held on January 24, 2008, is absent from the administrative record.  The above discussion is limited to the January 19, 2012 testimony.

-2-

*Plaintiff's counsel prefaced the testimony by noting the his client had returned to work since the prior hearing* (740-741).  *He amended the DIB claim, requesting benefits for the closed period of March 14, 2003 to February 18, 2009* (Tr. 17, 742).

Plaintiff offered the following testimony:

He was unable to bow hunt during the closed period, but "sanded" his homemade bows for five to ten minutes at a time to keep his upper extremities active (Tr. 744-745).  He was able to sit, stand, or walk during the closed period and took pain medicine for shoulder problems or leg cramping once or twice a week (Tr. 745).  He was able to use a weed whacker for short periods (Tr. 745).  He began a college level managerial program in August, 2005 (Tr. 746).  While completing his degree, he worked at Davenport University, walked, and performed light household chores (Tr. 746).  Despite rotator cuff injuries, he had not undergone surgery in the past six years (Tr. 747).  He modified his hunting bows to permit "one-arm shooting," but was only able to make three shots at a time (Tr. 748).

### B.    Medical Evidence[2]

### 1.  Treating Sources

---

[2] Discussion of medical records created before March 14, 2003 or after the December 31, 2008 expiration of DIB benefits is included for background purposes only.  Treatment for conditions unrelated to the application for benefits have been reviewed but are omitted from discussion.

In March, 1999, Plaintiff underwent left rotator cuff repair (Tr. 292). In March, 2002, he underwent arthroscopic surgery of the right shoulder (Tr. 576). He was permitted to return to work without restrictions later the same month (Tr. 607). February, 2003 therapy notes state that he re-injured the left shoulder in the previous month (Tr. 335, 599). In March, 2003, Jerome V. Ciullo, M.D. noted Plaintiff's complaints of dizziness upon neck movement (Tr. 391). EMG studies performed the following month showed "borderline bilateral carpal tunnel syndrome" but no evidence of radiculopathy or "neuromuscular abnormality" (Tr. 411). Dr. Ciullo limited Plaintiff to six pounds lifting (Tr. 613). A CT of the left shoulder showed a small labral tear but no evidence of a rotator cuff tear (Tr. (Tr. 414). An arthrogram of the left shoulder was unremarkable (Tr. 415). An ultrasound showed "minimal" bursitis (Tr. 416). In June, 2003, Plaintiff underwent "slap lesion debridement and repair" of the left shoulder without complications (Tr. 394, 443, 586).

August, 2003 therapy notes state that Plaintiff was able to pick blueberries without problems (Tr. 329). Dr. Ciullo recommended work activity "modified to what [Plaintiff] can do in physical therapy" (Tr. 589, 594). September, 2003 therapy notes state that Plaintiff's gait was unremarkable with left shoulder strength of 3/5 or 4/5 (Tr. 320). Dr. Ciullo limited Plaintiff to two pounds lifting and precluded all sitting, driving, standing, walking, or bending (Tr. 618-619). In November, 2003, Plaintiff opined that he required right rotator cuff surgery (Tr. 310). Dr. Ciullo noted a full range of motion in both shoulders, opining that Plaintiff needed "to avoid overhead activity on a repetitive basis," but was otherwise capable of lifting up to 50 pounds (Tr. 395). December, 2003 physical therapy notes state that

-4-

Plaintiff was pleased with his progress and demonstrated 4/5 left shoulder strength (Tr. 307). January, 2004 physical therapy notes state that Plaintiff's left shoulder was "feeling really good lately," with stiffness when he did "a lot of stuff at home" (Tr. 298). He reported that he had been working on his hunting bows (Tr. 298). In March, 2004, Dr. Ciullo opined that Plaintiff was unable to resume his former work but was not disabled from other work (Tr. 407). He predicted that Plaintiff's condition would continue to improve (Tr. 408). April, 2004 therapy notes state that Plaintiff went "wild boar hunting" the previous weekend and shot one boar (Tr. 361). The same month, Dr. Ciullo observed "a full range of motion in both shoulders" (Tr. 393). The following month, Joanna A Kala, D.O. noted that Plaintiff denied tingling in the left upper extremity but that an EMG showed "thoracic neuropathy" (Tr. 454-455).

In June, 2004, Plaintiff demonstrated improved range of motion of the neck and left shoulder (Tr. 352). In July, 2004, Plaintiff reported tingling and pain of the left upper extremity (Tr. 347). In September, 2004, neurosurgeon John E. McGillicuddy, M.D. found the absence of vascular or neurological involvement in Plaintiff's neck complaints (Tr. 397, 470). Imaging studies of the cervical spine showed exclusively non-severe conditions (Tr. 473). The following month, Dr. McGillicuddy noted that a recent EMG showed left-sided thoracic neuropathy but that the neuropathy was "fairly minimal" (Tr. 460, 467-468). An MRI performed the same month showed a partial thickness tear of the right shoulder but no other "significant internal derangement" (Tr. 393). An MRI of the brain was unremarkable (Tr. 464). In December, 2004, Plaintiff reported that he used his right arm for most activities

(Tr. 384).  Also in December, 2004, Anthony de Bari, M.D. observed that Plaintiff was "doing quite well with the left side" but experienced increasing problems on the right (Tr. 482).

In January, 2005, Dr. de Bari prescribed Darvocet for upper extremity pain (Tr. 515).  The following month, Plaintiff underwent right rotator cuff repair (Tr. 487, 529-531).  In April, 2005, Plaintiff completed an application to hunt with a modified bow (Tr. 526-527, 667).  The following month, he demonstrated a full range of shoulder motion (Tr. 478).  Plaintiff was discharged from physical therapy in June, 2005 after achieving all therapy goals (Tr. 500, 687).  Dr. de Bari recommended a preclusion on overhead lifting with no lifting above 25 pounds or above chest level (Tr. 477).

October, 2005 imaging studies of the elbows were unremarkable (Tr. 559, 715).  In November, 2005 Richard A. Hall, D.O. noted Plaintiff's complaints of elbow pain (Tr. 553).  November, 2005 MRIs of the cervical and thoracic spine were negative for abnormalities (Tr. 569).  In August, 2006, Plaintiff underwent a cervical spine resection at C-2 without complications (Tr. 635).  In January, 2008, Dr. Clark, found that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; sit, stand, or walk for six hours in a workday; and experienced severe limitation in the ability to push and pull in the upper extremities[3] (Tr. 655).  May, 2010 EMG studies showed right ulnar nerve irritation and mild carpal tunnel syndrome on the left (Tr. 729).  Plaintiff was advised to wear a left wrist splint

---

[3]This record was submitted with Dr. de Bari's records (Tr. 656-724).

(Tr. 729).  He underwent left carpal tunnel release the following month (Tr. 730-731).

### 2.  Non-Treating Sources

 A May, 2005 Physical Residual Functional Assessment performed on behalf of the SSA states that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push or pull without limitation in the lower extremities (Tr. 538).  He was limited to occasional pushing/pulling in the upper extremities (Tr. 538).  Postural limitations consisted of occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; frequent balancing; and a preclusion on climbing ladders, ropes, or scaffolds (Tr. 539).  He was precluded from all overhead reaching and concentrated exposure to vibrations and hazards (Tr. 540-541).

### C.  Vocational Expert Testimony

VE Harrison classified Plaintiff's former work as a truck driver and gravel hauler as semiskilled at the light, medium, and heavy exertional levels (as performed); service grinder operator, skilled/light or medium[4] (as performed); excavating laborer, unskilled/ medium (as performed); and laborer, unskilled/heavy (as performed) (Tr. 750 citing 744).

The ALJ then posed the following hypothetical question, taking into account

---

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Plaintiff's age, education (at the time of onset), and work experience:

> [S]edentary level . . . except that the person can lift less than 10 pounds frequently, 10 pounds occasionally and stand and/or walk with normal breaks for a total of six hours in an eight-hour day. Can sit with normal breaks for a total of six hours in an eight-hour workday, is limited to pushing and pulling motions with the left and right upper extremities. Should avoid unprotected areas of moving machinery and heights and can perform reaching below the shoulder level. And cannot perform competitive lifting with either arm over those weights that I gave you. Could this hypothetical person perform any of the claimant's past relevant work?

The VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the sedentary, unskilled work of a surveillance monitor, stationary greeter, or watch person with 1,500 of such jobs existing in the regional economy (Tr. 751). The VE testified that if the same individual were unable to reach or perform repetitive lifting with either arm, all gainful employment would be precluded (Tr. 751).

**D.      The ALJ's Decision**

The ALJ found that between March 14, 2003 and the expiration of DIB benefits on December 31, 2008, Plaintiff was not disabled (Tr. 29). Citing Plaintiff's medical records and testimony, the ALJ found that Plaintiff experienced the severe impairments of "elbow and neck pain and status-post torn rotator cuff with multiple surgeries to the shoulders bilaterally" but that neither condition met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 20). The ALJ found that Plaintiff had a Residual Functional Capacity ("RFC") for sedentary work with the following additional

-8-

limitations:

> [C]laimant can lift less than 10 pounds frequently and 10 pounds occasionally. [He] can sit (with normal breaks) for a total of 6 hours in an 8-hour workday. The claimant is able to perform reaching below shoulder level with bilateral upper extremities with no overhead reaching above shoulder level and no repetitive lifting with either upper extremity. The claimant is limited to occasional pushing and pulling motions with the bilateral upper extremities. The claimant should avoid areas of moving machinery and heights (Tr. 21).

Citing the VE's testimony, the ALJ determined that Plaintiff could work as surveillance security monitor (Tr. 29).

The ALJ discounted the allegations of disability for the closed period, noting that Plaintiff was able to "hunt with a modified bow, mow the lawn, use a week whacker, drive, and attend college classes" (Tr. 27). The ALJ observed that Plaintiff did not exhibit "significant side effects from medication" (Tr. 27). He adopted Dr. de Bari's June, 2005 work restriction of no overhead reaching, noting that it was "consistent with the longitudinal treatment history" (Tr. 25).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-10-

residual functional capacity to perform specific jobs existing in the national economy."
*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# ANALYSIS[5]

## The Credibility Determination

Plaintiff argues that the ALJ erred by discounting the allegations of physical limitation.  *Plaintiff's Brief* at 6-8, *Docket #12* (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).  On a related note, he argues that the erroneous rejection of his testimony also invalidates the VE's job findings, which he contends were based on an incomplete set of hypothetical limitations.  *Id.* at 8-10.  Plaintiff also disputes the finding that he could perform the work of a surveillance monitor, noting that Dictionary of Occupational Title ("DOT") code number for the position "has not been updated since 1986." *Id* at 13 (citing DOT Code 379.367-010).[6]

_____

[5]Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002).

[6]
Plaintiff's brief also contains a recitation of the law pertaining to the analysis of a treating source's disability opinion.  *Plaintiff's Brief* at 13-15.  However, he does not state which, if any, treating source opinion ought to have been adopted or why the ALJ's discussion of the treating source evidence warrants remand.
My own review of the record shows that the ALJ rejected Dr. Clark's January, 2008 finding that Plaintiff was unable to perform *any* reaching with either arm (Tr. 26, 665).  However, the ALJ provided "good reasons" for rejecting Dr. Clark's opinion as to the inability to reach, noting that "nothing in the record after June 28, 2005 . . . supports a restriction from all reaching with either upper extremity" (Tr. 26); 20 C.F.R. § 404.1527(c)(2).  The ALJ noted elsewhere that Dr. de Bari's June, 2005 work restriction on only *overhead* reaching was "consistent with the longitudinal treatment history" (Tr. 25).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [7]

In disputing the credibility determination, Plaintiff argues that his claims of functional restrictions due to shoulder and neck problems were supported by the medical transcript.  He notes that  that in March, 2003, he experienced dizziness and was ordered not to drive. *Plaintiff's Brief* at 11 (citing Tr. 391).  However, the  medical records  created after September, 2003 do not support the presence of a neurological condition creating dizziness

---

[7]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

-12-

or physical conditions justifying long-term driving restrictions (Tr. 618-619). While Plaintiff cites an April, 2004 medical opinion stating that he would be permanently unable to reach above shoulder level or lift more than 15 pounds, *Id.* at 11 (citing Tr. 393), the RFC found in the administrative opinion actually exceeds those limitations by precluding all reaching above shoulder level and lifting more than 10 pounds (Tr. 21).

Plaintiff's contention that he was unable to perform any reaching is flatly contradicted by numerous portions of the record. In rejecting the claims of limitation, the ALJ noted that Plaintiff was able to continue bow hunting using a modified bow, build bows, mow the lawn, use a week whacker, wash dishes, and fold clothes (Tr. 21). My own review of the medical transcript shows that Plaintiff was able to pick blueberries two months after a June, 2003 shoulder procedure (Tr. 329), could engage in a variety of physical activities at home as of January, 2004 (Tr. 298), and went wild boar hunting in April, 2004 (Tr. 361). While Plaintiff underwent right rotator cuff surgery in February, 2005, he was discharged from physical therapy in June, 2005 after achieving all of his therapy goals (Tr. 500, 687). For these reasons, the ALJ's credibility determination should remain undisturbed. *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Likewise, the ALJ did not err in omitting the unsubstantiated claims from the hypothetical question posed to the VE. *See Stanley v. Secretary of Health and Human*

-13-

*Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include rejected allegations

among the hypothetical limitations).   Plaintiff's argument that the VE provided outdated job

testimony is also without merit.   *Plaintiff's Brief* at 13.   While Plaintiff notes that the DOT

job description for surveillance monitor (Code 379.367-010) has not been updated since

1986, he provides no support for the contention that the position no longer falls in the

unskilled category.   My own review of the DOT shows that the position of surveillance

monitor is presently categorized as a Specific Vocational Preparation ("SVP") 2 position.[8]

Thus, the VE did not err in testifying that it was "unskilled" work.   *see* DOT Code 379.367-

010, http://www.occupationalinfo.org/37/379 367010.html (last visited December 31, 2013).

        In closing,  I caution that my recommendation to uphold the ALJ's findings should

not be read to trivialize Plaintiff's previous shoulder problems.   Nonetheless, the ALJ's

determination that the he was not disabled before December 31, 2008 is well within the

"zone of choice" accorded to the fact-finder at the administrative hearing level and should

not be disturbed by this Court.   *Mullen v. Bowen*, *supra*.

## CONCLUSION

        For the reasons stated above, I recommend Defendant's motion for summary judgment

---

[8]

        SVP measures the "amount of lapsed time required by a typical worker to learn the
techniques, acquire the information, and develop the facility needed for average performance
in a specific job-worker situation." DOT, Appendix C, http://www.occupationalinfo.
org/appendxc1.html#II (last visited on December 31, 2013).   A job with an SVP rating of two
corresponds to a job that a typical worker can perform after "anything beyond short
demonstration up to and including 1 month." *Id.*   An SVP of 1 or 2 refers to unskilled work.
SSR 00-04p.

be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: December 31, 2013            s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 31, 2013, electronically and/or by U.S. mail.

s/Michael Williams
Case Manager to the
Honorable R. Steven Whalen